**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alice K. BLANDING, Sidney C. Anthony and John L. Vaughn, Defendants– Appellants.**

**Nos. 94–2975, 94–2976 and 94–2977.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1995.

Decided April 14, 1995.

Michael Jude Quinley (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, for plaintiff-appellee.

Gene Gross (argued), Reed, Heller, Mansfield & Gross, DuQuoin, IL, for Alice Blanding.

William A. Alexander, Gene Gross (argued), Troutt, Alexander, Popit & Warner, Benton, IL, for Sidney C. Anthony.

David M. Williams, Gene Gross (argued), Fairfield, IL, for John L. Vaughn.

Before FAIRCHILD, CUMMINGS and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendants Alice K. Blanding, her son John L. Vaughn, and Sidney Cornell Anthony were indicted and tried together for conspiracy to possess with the intent to distribute cocaine base and various distribution offenses in violation of 21 U.S.C. § 841. After a jury convicted all three of conspiracy as well as individual drug distribution counts, the district judge sentenced Blanding to 66 months', Anthony to 120 months', and Vaughn to 63 months' imprisonment. Defendants now challenge their convictions on a number of grounds, but we affirm.

## FACTS

The drug investigation that netted defendants Blanding, Anthony and Vaughn centered around the southern Illinois town of Colp, a hamlet of about 300 residents. Using several local residents as informants and relying on controlled buys, several of which

were secretly recorded, Illinois state police investigators uncovered what they alleged was a network of drug dealers relying for its main supply on Buford and Robert Lewis, two brothers from nearby Carbondale. According to the superseding indictment filed against the named defendants, Buford Lewis supplied both Anthony and an individual named Leonard Bowen with cocaine base; Bowen in turn supplied Blanding and Vaughn with the drug. The indictment also alleged that each of the three defendants made a number of individual sales of cocaine base in amounts ranging from .1 to 1.4 grams.

Police arrested ten suspects, including the three defendants, in early November 1993. Several of the suspects pleaded guilty; the grand jury returned an indictment against defendants and one additional individual, Brandon A. McKinney. McKinney subsequently pleaded guilty as well, but the remaining defendants went to trial on the conspiracy and distribution charges in April 1994.

## ANALYSIS

Defendants mount several joint challenges to their convictions.

*Alleged unconstitutionality of sentencing provisions of 21 U.S.C. § 841 with respect to cocaine base*

■ Defendants claim that the disparate statutory treatment of convictions for distribution of cocaine, as compared to cocaine base, violates constitutional guarantees of equal protection. However, as defendants themselves concede, "[v]irtually every Federal Court with the opportunity to address the equal protection argument [including this Circuit] has rejected it" (Pl.Br. 21). We are not persuaded to depart from recent Circuit precedents rejecting the equal protection claim. See, *e.g., United States v. Chandler*, 996 F.2d 917 (7th Cir.1993) (defendant failed to establish discriminatory intent of sentencing scheme, which passed muster under rational basis scrutiny); *United States v. Lawrence*, 951 F.2d 751 (7th Cir.1991) (sentencing scheme is rationally related to Congress' particular concerns about cocaine base). Defendants also urge us to find that the term "cocaine base" is ambiguous and to reject an enhanced penalty under the rule of lenity, but we believe that Congress has defined the substance—and its intention to impose punishment befitting the crime—with appropriate clarity.

*Multiple conspiracies instruction*

■ Defendants also challenge the district court's refusal to adopt their proposed instruction number 5, which dealt with multiple conspiracies. As discussed in greater detail below, the proof in this case may support a theory of multiple conspiracies, and an instruction advising the jury as to its responsibilities under that theory was proper. See *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (error where single conspiracy charged, eight or more separate conspiracies proved, and no multiple conspiracies instruction). What defendants fail to acknowledge is that the court did give a multiple conspiracy instruction, albeit worded slightly differently than the one proposed by defense counsel.[1] We have previously approved the instruction that was actually given to the jury, *United States v. Canino*, 949 F.2d 928, 940–41 (7th Cir.1991), certiorari denied, 503 U.S. 996, 112 S.Ct. 1701, 118 L.Ed.2d 410, and see no reason why it was inappropriate here.[2]

1. Indeed, at the jury instruction conference, defense counsel conceded that he had no substantive objection to the proposed instruction: "I'm not saying that it is inaccurate, Your Honor. I just prefer my language." (Jury Instruction Conference Tr. 10.)

2. The instruction given provided:
    You may judge the defendants only on the charges alleged in the Indictment. You may not convict them of any other alleged conspiracy in the event you should conclude that they have engaged in some other conspiracy.

Therefore, if you are not convinced beyond a reasonable doubt that a particular defendant knowingly and intentionally joined the conspiracy alleged in the Indictment, you must find that defendant not guilty.

Even if you find that a particular defendant knowingly and intentionally joined a conspiracy other than that alleged in the Indictment, you should, nevertheless, find that defendant guilty of the charge alleged in the Indictment if you are convinced beyond a reasonable doubt that the defendant knowingly and intentionally joined the single overall conspiracy that is al-

*Admissibility of co-conspirator statements*

■ Defendants claim that the district court erred when it admitted certain evidence as non-hearsay pursuant to Fed. R.Evid. 801(d)(2)(E), which governs co-conspirator statements.[3] At a pre-trial motion hearing, the district judge determined from his own review of the proffers and audiotapes (primarily taped "overhears" of controlled purchases) made by a number of unindicted individuals that these individuals were members of the charged conspiracy, and hence admitted their statements subject to objection at trial (Mot.Hrg.Tr. 66–67). Defendants challenge as a violation of due process the trial judge's decision to admit these statements without making explicit findings as to their relevance or, the defense argues, subjecting the statements to "searching scrutiny" regarding their reliability (Pl.Br. 37).

In making a preliminary determination as to the admissibility of co-conspirator statements, the district judge simply followed our case law. In *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), we held that statements of unindicted co-conspirators are admissible if the government convinces the court, as a preliminary matter and by a preponderance of the evidence, that a conspiracy existed, that the defendant and the declarant were members thereof, and that the proffered statements were made during the course of and in furtherance of the conspiracy. *Id.* at 1134–35. The court can then admit the statements subject to its later determination that the government proved these foundational elements at trial. *Id.* at 1131.

In recent years we have set forth additional pretrial methods, beyond the proffer and proof used in this case, by which a district court can make a *Santiago* admissibility determination. See, *e.g., United States v. Cox*, 923 F.2d 519, 526 (7th Cir.1991) (reviewing additional methods of making admissibility determinations). These methods have, if anything, expanded the discretion of trial judges in deciding how to handle co-conspirator statements; this Court has not, beyond advocating some sort of pretrial review, felt it necessary to set stricter parameters for such review. Beyond a conclusory allegation that the trial judge in this case was too hasty, there is nothing in defendants' argument that suggests the court exceeded its powers.

Indeed, the district court conditionally admitted the statements, pursuant to *Santiago*, and repeatedly offered the defendants the opportunity to mount a further challenge at trial if the government failed to lay a proper foundation for admission (Mot. Hrg.Tr. 27, 28, 29, 67). Defense counsel did not exercise this option. To the extent that defendants' challenge is viewed as a substantive objection to the admission of specific statements, their failure to preserve this claim at trial with contemporaneous objections is a forfeiture. See *Prymer v. Ogden*, 29 F.3d 1208, 1213 (7th Cir.1994) (failure to object at trial forfeits challenge on appeal), certiorari denied, —— U.S. ——, 115 S.Ct. 665, 130 L.Ed.2d 599. Moreover, defendants have made no showing of prejudice from the admission of co-conspirator statements. This challenge, too, falls short.

*Sufficiency of the evidence*

■ Defendants also contend that there was inadequate evidence to support the jury's finding that they were members of the charged conspiracy. While conceding they engaged in spot sales of cocaine base, Blanding, Vaughn and Anthony each insist the evidence did not support a finding that they conspired together as traffickers. Thus, they insist, their convictions on the conspiracy count must fail.

■ Presented with a sufficiency of the evidence challenge, this Court reviews the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the government, and will affirm

---

leged in the Indictment and the elements of which are otherwise contained in these instructions.

**3.** The exception provides in pertinent part that:

(d) A statement is not hearsay if … (2) The statement is offered against a party and is … (E) a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy.
Fed.R.Evid. 801(d)(2)(E).

if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Byerley*, 999 F.2d 231, 234 (7th Cir.1993) (citations omitted). A mere scintilla of evidence, however, will not suffice; there must be "substantial" evidence that the defendant committed the charged crime. *United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir.1990).

At trial, the jury heard testimony from defendants Blanding and Anthony (Vaughn called no witnesses and did not testify), police informants Harry Dean Collins, Mark Malone and Donna Harper, and several other individuals named in the indictment including Bowen, McKinney, George "Jay" Wright and Abraham Flagg. For purposes of brevity, only the evidence relevant to our disposition of defendants' appeal is summarized below. As it must be in a sufficiency of the evidence challenge, this evidence will be viewed in the light most favorable to the government.

### 1. Harry Dean Collins

Collins testified that Bowen and he "dropped" drugs that they had obtained from the Lewis brothers to Blanding and other residents of Colp (Tr. 116). He also testified that he purchased cocaine from Blanding, Vaughn, and Anthony on various occasions (Tr. 126, 133), that he bought drugs from Blanding while Vaughn was present (Tr. 134), and that he had witnessed Bowen cutting up cocaine with Vaughn present and subsequently providing some of that cocaine to Vaughn (Tr. 212). The jury heard an audiotape made on December 17, 1992, in which Collins approached Blanding seeking to buy drugs. In the tape, Blanding appeared to have control of both Vaughn's drug supply and her own, and alluded to Bowen's participation in procuring and preparing her drugs for resale.[4] The jury also heard a tape made the following day in which Collins made a drug purchase from Vaughn and the two men discussed when Bowen would be able to restock his customers.[5]

### 2. Mark Malone

Malone testified that he had purchased cocaine base from Blanding's son Mike at her trailer with both Blanding and Vaughn present (Tr. 246). The jury heard a tape, made April 27, 1993, in which Malone attempted to purchase drugs from Vaughn but was instead directed by Vaughn to buy from McKinney.[6]

4. The tape transcript included the following colloquy:

> COLLINS: How much you got there? How many is that?
> BLANDING: Seven.
> COLLINS: Uh. How many you got left out of that? What do you have, an eight ball?
> BLANDING: Nah. Just John John's, he only got a sixteenth.
> COLLINS: Here's forty.... Uh, this your, this John's or yours or ...?
> BLANDING: This is John's.
> COLLINS: Leonard going to make a drop tonight, you think, or ·
>
> .     .     .     .     .
>
> BLANDING: If I can find him, he suppose to already had me one.
>
> .     .     .     .     .
>
> COLLINS: Is this the same as that, those three I got from you at Cambria or ... Looks a little bit different, it's big.
> BLANDING: Uh. Leonard cooked this up himself.
> COLLINS: Oh, did he? Alright, so we're straight then, right? I might be back a little bit later on this evening.
> BLANDING: You, you straight with, with

John. You ain't straight me.
> (Reprinted in Pl.App. A3).

5. The conversation went as follows, in pertinent part:

> COLLINS: You carrying anything?
> VAUGHN: Not on me.
> COLLINS: Where's ah,
> VAUGHN: I got it at the crib....
>      Later, the conversation continued:
> COLLINS: ... [Y]ou gonna load back up here in a little bit?
> VAUGHN: Yeah, soon as I get, catch up with, an ole boy [Leonard]....
> COLLINS: Alice was waiting on him for an eight ball last night. I don't know if she got hers or not.
> (Reprinted at Pl.App. A4).

6. The conversation proceeded as follows:

> MALONE: You got anything?
> VAUGHN: Unh uh.
> MALONE: F**k. You seen Abe?
> VAUGHN: No. How many you looking for?
> MALONE: I was wanting a sixteenth....
> VAUGHN: I think Brandon got some rocks.
> MALONE: Where's he at, over there?
> VAUGHN: Yeah....
> MALONE: Huh. So Brandon's got some or what?
> VAUGHN: He probably got rocks, twenties.

### 3. Donna Harper

Harper testified that she often visited Blanding's trailer, and witnessed Bowen delivering cocaine base that Blanding subsequently apportioned for resale (Tr. 310–311). She also testified that on several occasions, Blanding asked her to accompany Mike Vaughn to Bowen's house in order to pick up packages of cocaine base. Additionally, Harper testified that she had purchased cocaine base from Anthony. The jury heard a tape of one such transaction, made on August 26, 1993. (Pl.App. A8).

### 4. Leonard Bowen

Bowen testified that he obtained drugs from the Lewis brothers in Carbondale and redistributed them to Colp residents, including Blanding and Vaughn (Tr. 438, 448, 471). He stated that on occasion Blanding's sons acted as couriers, picking up the cocaine base from him and delivering the drugs to her (Tr. 452). He also testified that Blanding would frequently ask him when he was making his next trip to Carbondale (Tr. 477), and once had supplied him with money to pick up cocaine base for her in Chicago (Tr. 514). Bowen stated that Blanding had expressed concern regarding a police investigation and possible infiltration by informants (Tr. 516).

Bowen denied that he had ever sold cocaine base to Anthony (Tr. 468), but stated that Anthony had once identified his drug source as Lewis (Tr. 470).

### 5. Brandon McKinney

McKinney testified that he sold drugs in partnership with Mike Vaughn, defendant Vaughn's brother, and that the two would frequently cut up the cocaine base in either Blanding's or Vaughn's trailer homes (Tr. 614). He also stated that Blanding often approached him while he was conducting

> MALONE: Can't get a sixteenth?
> VAUGHN: I don't know, I'll ask him.
> MALONE: You want me to wait here or what?
> VAUGHN: Yeah.
> (Reprinted at Pl.App. A7). McKinney subsequently sold Malone a quantity of cocaine base.

**7.** Flagg's testimony was as follows:
> Q: Did Buford Lewis tell you why he wanted to sell to you for Colp instead of Sidney? ...

drug transactions to ask if he was "out" yet, which he took to mean that she was waiting until he had sold his entire supply before she began dealing (Tr. 615).

### 6. George "Jay" Wright

Wright testified that he and Anthony, life-long friends, were also partners in selling cocaine base, and that to this end he would refer customers to Anthony when he ran short of drugs (Tr. 642). He also testified that Anthony's source for cocaine base was Buford Lewis (Tr. 644), and that on several occasions he dropped off Anthony at Lewis' house believing that Anthony intended to procure narcotics there (Tr. 644–646).

### 7. Abraham Flagg

Flagg testified that on several occasions he delivered cocaine from Bowen to Blanding (Tr. 684). He also testified that he sometimes purchased cocaine base from Blanding, Vaughn or Anthony to sell to his own customers (Tr. 690–691), and that on several occasions he carried money from Blanding to Bowen (Tr. 693). Moreover, Flagg stated that Buford Lewis had suggested making Flagg, instead of Anthony, his main distributor in Colp (Tr. 700–701).[7]

In examining defendants' claims, this Court must decide whether any reasonable jury could have concluded from the evidence summarized above that there was a single conspiracy to distribute drugs in Colp—a "combination or confederation between two or more people formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Soto-Rodriguez*, 7 F.3d 96, 99 (7th Cir.1993). The jury must also have been able to conclude that defendants willingly joined this conspiracy, and in so concluding must rationally find "more than suspicion, more than knowledge,

> A: He just, basically, just said he had a couple of people he had been dealing with previous, before. He just wanted to deal with one person (Tr. 700–701).
> During cross-examination, Flagg reiterated that Buford Lewis told him "he just wanted to start fronting me a bunch of dope to save on a lot of trips from different people, cut down on his traffic, and a few people from Colp was coming and getting it from him" (Tr. 717).

acquiescence, carelessness, indifference, [or] lack of concern" in defendants' actions. *United States v. Townsend,* 924 F.2d 1385, 1392–93 (7th Cir.1991), quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674. Beyond this, however, the government's burden is not great: it need only prove "the existence of the conspiracy and a participatory link with the defendant." *United States v. Campbell,* 985 F.2d 341, 345 (7th Cir.1993).

■ Although this case presents a close factual question,[8] we think that the evidence adduced at trial supported a finding of a single conspiracy joined by all the defendants. Essentially, the government's proof suggested a hierarchy with Buford Lewis at the top, serving as Colp's main (although not sole) source of supply; a first tier of middlemen including Anthony, Bowen, and others named in the indictment; and a second tier of middlemen that encompassed Blanding and Vaughn, who bought cocaine base from Bowen for resale. While many ostensibly competing sellers operated at street level, evidence of customer referrals to other suppliers suggests that cooperation rather than competition was the norm. Such cooperation would foster the goal of making Colp a top destination for drug purchasers from nearby communities.

■ The evidence, it is true, could also show that instead of one overarching conspiracy, Colp's drug trade supported numerous smaller conspiracies among various individuals. Yet the fact that the government's proof may also be consistent with other theories is irrelevant, so long as a rational jury could legitimately conclude that a single conspiracy existed. *Townsend,* 924 F.2d at 1389. The evidence here was consistent with a single conspiracy theory: all three defendants ultimately purchased cocaine base from Buford Lewis with the intent to resell it. "Evidence of frequent and repeated transactions ... can support a conspiracy conviction. A purchaser of drugs for redistribution need not be accountable as an employee to the seller for a jury to find that the purchaser had joined in and furthered a conspiracy to distribute narcotics." *United States v. Plescia,* 48 F.3d 1452, 1460 (7th Cir.1995) (citations omitted). Blanding and Vaughn freely admitted to buying cocaine base from Bowen, who stated that he purchased it from Lewis. Anthony denied purchasing cocaine base from Lewis, but the jury was entitled to discredit his testimony and to rely on the testimony of his good friend, George "Jay" Wright, who stated that Anthony did buy from Lewis. In addition, Abraham Flagg testified that Lewis was considering consolidating his operations from many distributors—including Anthony—to one, in order to cut down on traffic from Colp. This statement supports the theory that there was one conspiracy to distribute drugs in Colp, headed by Lewis with the active participation of all three defendants.

The fact that Anthony did not work directly with Blanding or Vaughn is immaterial. This Court has held that "[c]oconspirators do not have to have contact with, or even know, all of the other conspirators. In addition, they need not be aware of all the details of the conspiracy in order to be a conspirator." *United States v. Goines,* 988 F.2d 750, 759 (7th Cir.1993) (citations and internal quotations omitted), certiorari denied, — U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195. In this case, of course, there was evidence that the defendants were well aware of one another's existence. At times various dealers would

8. Many of the defendants and unindicted co-conspirators were related, either by blood or by marriage, and virtually all of them were acquainted. Some of the characteristics of defendants' dealings generally considered indicia of conspiracy, such as trust and cooperation, could logically have resulted from kinship rather than partnership in crime; it is not implausible that the defendants were not conspirators in the narrowest legal sense, but simply looked out for one another. The government in its brief seems to urge that blood ties are in themselves evidence of conspiratorial connections, a proposition this Court adamantly rejects. We have stated that "mere knowledge of, approval of, association with, or presence at a conspiracy is insufficient to establish ... participation," *Durrive,* 902 F.2d at 1225, and hereby add "kinship to members of" to the above list. Yet after considering all of the evidence put forth at trial, we conclude that the government offered substantially more than a family tree. Having made this determination, we must defer to the jury's conclusion that they were convinced beyond a reasonable doubt of the existence of a conspiracy and defendants' participation therein.

back off to allow other dealers to sell first, or would direct potential customers to other dealers to preserve a sale in Colp. This "prolonged cooperation" may show that the defendants "joined both mind and hand ... to make [the conspiracy's] accomplishment possible." *United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir.1993) (citation omitted), certiorari denied, —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433. In any event, there was sufficient evidence to support the jury's conclusion that all three defendants knowingly participated in a distribution ring with other individuals.

■ Even if this Court had concluded that the evidence did not show a single conspiracy, defendants' convictions would still stand. The government introduced ample evidence that each of the three defendants conspired with someone else named in the indictment to deal drugs.

With regard to Blanding and Vaughn, the evidence shows that they conspired together with Bowen to distribute drugs in Colp. Bowen testified that he frequently dropped cocaine base to both Blanding and Vaughn for resale, and engaged in numerous cooperative acts with them. Bowen helped Blanding cut up her cocaine for sale; Blanding used Vaughn to pick up cocaine and deliver cash to Bowen; Blanding collected money for Vaughn's sales. Moreover, customers bought drugs in Blanding's trailer while both she and Vaughn were present. "The mere fortuitous presence at the scene where a crime takes place does not prove participation in the conspiracy, but the presence of the defendant at critical junctures ... alone can establish a defendant's participation." *United States v. Theodosopoulos*, 48 F.3d 1438, 1451 (7th Cir.1995). From all of this evidence, a jury could legitimately have inferred an agreement to facilitate cocaine distribution at least among Bowen, Blanding and Vaughn.[9]

There is also substantial evidence to support Anthony's conspiracy conviction on the basis of his conspiracies with Buford Lewis and George "Jay" Wright. The jury was entitled to believe Wright's explicit statement that he and Anthony were partners in drug distribution, as well as the evidence that Wright referred his customers to Anthony during short periods and vice versa. And while Anthony denied that he ever obtained cocaine base from Buford Lewis, the jury could have discredited his denial and instead believed Wright, who testified that he drove Anthony to Lewis' home in Carbondale to refresh their drug supply. The jury also heard credible testimony from Abraham Flagg that Lewis was considering channeling his drug operation, which had been running to Colp through Anthony and a few others, down to one middleman supplier—Flagg himself.

■ Even if this case involved multiple conspiracies, this Court would be presented only with a variance problem: a claim that the proof at trial differed from the crimes alleged in the indictment. Variances must be disregarded unless they prejudice the defendant, *Townsend*, 924 F.2d at 1410, and there is no indication of such prejudice here. With respect to the ultimate convictions, as we have seen, there was evidence aplenty to convict each defendant of conspiracy to possess drugs with the intent to distribute. "If there was sufficient evidence to convict the defendants of conspiracy to distribute illegal drugs, then their convictions were valid, notwithstanding that the indictment characterized as a single conspiracy what in fact were several." *Id.*

■ The sentences meted out to each defendant similarly present no problem of prejudice, even on the assumption—which we reject, given the evidence presented in this case—that a jury could not have found a single conspiracy. While "conspiracy liability cannot exceed the scope of a defendant's agreement to further criminal activity," *United States v. Edwards*, 945 F.2d 1387, 1396 (7th Cir.1991), certiorari denied, 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992), the district judge carefully considered only each defendant's individual drug trans-

---

9. There is also evidence that Vaughn conspired with McKinney by steering customers to McKin- ney when Vaughn was short of supply.

actions in determining relevant conduct. Thus Blanding, whom the judge found personally distributed between 5 and 20 grams of cocaine base, received a 66–month sentence. Vaughn received a 63–month term for conduct involving between 5 and 20 grams of cocaine base. Anthony—whom the judge found had distributed 50 grams of cocaine base—received 120 months' imprisonment. The judge sentenced each defendant to a concurrent conspiracy count equivalent to the length of the drug distribution sentences. There was no crossover attribution of relevant conduct, and as a result no prejudice resulting from a purported variance.

## CONCLUSION

Finding no error in the trial and substantial evidence to support the verdict, this Court affirms the convictions of defendants Blanding, Anthony and Vaughn.