69 F.3d 540
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ryan BECK, Defendant-Appellant.
 No. 94-3046.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 3, 1995.
Decided Oct. 26, 1995.
 
 Before CUMMINGS, ESCHBACH and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 On December 6, 1993, Ryan Beck was arrested for possessing a gun and 8.1 grams of cocaine base in six individually wrapped smaller bags. A jury subsequently convicted Beck of one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 841(a)(1) and Sec. 841(b)(1)(B), one count of possession of a firearm in connection with drug trafficking in violation of 18 U.S.C. Sec. 924(c), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). The district court sentenced him to 150 months imprisonment on counts one and three to run concurrently, 60 months imprisonment on count two to run consecutively, four years supervised release on count one, three years supervised release on counts two and three to run concurrently, and ordered Beck to pay a special assessment of $150.00. On direct appeal, Beck challenges the admission of certain testimonies, contends that his trial counsel was ineffective, and argues that the district court erred in sentencing him disproportionately for trafficking cocaine base rather than cocaine. We affirm.
 
 
 2
 A. Expert Testimony regarding the cocaine bse being packaged for resale
 
 
 3
 Beck first argues the district court erred by permitting FBI Agent David Hirtz to testify whether the cocaine base recovered from Beck was packaged for resale. The government asked:
 
 
 4
 Q: Now, Special Agent Hirtz, based strictly on your experience and training and education involving common criminal practices, specifically on the crack cocaine trade here in Peoria, specifically on the crack cocaine trade in the housing projects in Peoria, and absent and not and completely avoiding any, if any, specific knowledge of the defendant, do you have any opinion on whether or not a person possessing Government Exhibit 3 and 3A and Government Exhibit 4 would have those for the purpose of resale--have the cocaine for purposes of resale?
 
 
 5
 A: Yes, they would.
 
 
 6
 Q: Is that your opinion?
 
 
 7
 A: Yes, it is.
 
 
 8
 Beck contends that the government's insertion of the clause, "and absent and not and completely avoiding any, if any, specific knowledge of the defendant," allowed the jury impermissibly to infer that Hirtz was commenting on Beck's mental state in violation of Fed.R.Evid. 704(b). Because Beck did not object to these questions, we will reverse only for plain error. United States v. Olano, --- U.S. ----, ----, 113 S.Ct. 1770, 1778-79 (1993).
 
 
 9
 Rule 704(b) limits "expert testimony on medical or psychological analysis of a defendant's mental processes, but not law enforcement testimony that does not depend on such analysis." United States v. Willis, 61 F.3d 526, 533 (7th Cir.1995).
 
 
 10
 [W]hen a law enforcement official states an opinion about the criminal nature of a defendant's activities, such testimony should not be excluded under Rule 704(b) as long as it is made clear, either by the court expressly or in the nature of the examination, that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes.
 
 
 11
 United States v. Lipscomb, 14 F.3d 1236, 1242 (7th Cir.1994).
 
 
 12
 Beck argues that the negative used in the last question implied that Hirtz was allowed to base his opinion on special knowledge of Beck, and thus confused the jury. However, in reading the question, the more logical inference is that the prosecution asked Hirtz to base his opinion on his general knowledge and not on any special knowledge of Beck's intent. Hirtz testified as an expert on drug trade practices. Beck did not challenge his expertise. The record does not suggest that Hirtz had any special knowledge of Beck outside of the arrest reports. Further, the prosecution's question and Hirtz's answer avoided any express reference to Beck's "intent." Lipscomb, 14 F.3d at 1242-43 (finding references to the defendant's "intent" relevant although not determinative).
 
 
 13
 B. Prejudicial testimony.
 
 
 14
 Beck next argues that prejudicial statements made by government witnesses during their testimonies denied him a fair trial. However, Beck did not object to almost all of the complained testimonies, and fails to cite legal authority exemplifying how admitting most of these testimonies were plain error. See United States v. Schimmel, 950 F.2d 432, 434 n. 1 (7th Cir, 1991) ("This court has repeatedly 'made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...' "). Beck's argument seems to contend that the testimonies were impermissible under Fed.R.Evid. 402 (relevance) or Fed.R.Evid. 403 (prejudicial impact outweighs probative value). We generally defer questions regarding the admissibility of testimony to trial judges who are better positioned to assess the likely value and probable effects of the testimony. United States v. Brown, 34 F.3d 569, 574 (7th Cir, 1994), cert. denied, 115 S.Ct. 1136 (1995).
 
 
 15
 Beck first suggests that testimonies by Officer Eddlemon that the Warner Homes area was a "hot spot" of violent activity and by Agent Hirtz that linked gang membership to drug dealing was prejudicial and denied Beck a fair trial. However, these testimonies were invited by the defense during cross examination, and therefore admitting the testimony did not prejudice Beck. United States v. Johnson-Dix, 54 F.3d 1295, 1304 (7th Cir, 1995).
 
 
 16
 Beck next argues that the vivid analogies by Officer Mercer regarding the high demand for crack cocaine and by Agent Hirtz regarding the addictive effects of crack cocaine constituted prejudice. Beck does not argue that these analogies allowed the jury to infer false notions. Moreover, graphic analogies alone do not constitute plain error. See, e.g., Walls v. Armour Pharmaceutical Co., 832 F.Supp. 1505, 1509 (M.D.Fla.1993), affirmed in part, reversed in part on other grounds, Christopher v. Cutter Laboratories, 53 F.3d 1184 (11th Cir.1995) (objected to testimony analogizing the physical condition of hemophiliacs suffering from AIDS to victims of starvation in Somalia in which judge instructed the civil jury to consider the statement as not responsive found to be not prejudicial because the testimony was not designed to inject sympathy into the jury but to describe the wasting condition in AIDS patients with persisting diarrhea).
 
 
 17
 Beck also questions the prejudicial nature of other testimonies, but these claims lack sufficient merit to warrant further discussion.
 
 C. Ineffective Assistance of Counsel
 
 18
 Citing no case law, Beck mentions ineffective assistance of counsel as another trial error, evinced by the trial counsel's failure to object to the aforementioned testimonies. Beck's appellate counsel is different from his trial court counsel. We review a claim of ineffective assistance of counsel on direct appeal only if the claim is based on the trial court record, United States v. Kellum, 42 F.3d 1087, 1095 (7th Cir.1994), and when a defendant is "confident that the ineffectiveness of the lawyer's assistance was obvious from the transcript and might not think that the lawyer who had disserved him (or anyone else) would have anything helpful to say at an evidentiary hearing." Guinan v. United States, 6 F.3d 468, 471 (7th Cir.1993). It is generally extremely difficult to prove ineffective assistance of counsel on direct appeal. United States v. Trevino, 60 F.3d 333, 338 (7th Cir.1995).
 
 
 19
 To succeed on an ineffective assistance of counsel claim, Beck must demonstrate that his trial counsel's representation fell below an objective standard of reasonableness and that but for counsel's unprofessional error, the result would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). Because the cited testimonies did not prejudice Beck, Beck is unable to establish ineffective assistance of counsel on the trial record. Trevino, 60 F.3d at 339.
 
 D. Sentencing
 
 20
 Finally, Beck raises two related arguments under the rule of lenity and the equal protection clause that the district court erred by sentencing him to a greater sentence for possessing cocaine base than for possessing cocaine. Both these arguments were resolved recently in United States v. Blanding, 53 F.3d 773, 776 (7th Cir.1995):
 
 
 21
 Defendants claim that the disparate statutory treatment of convictions for distribution of cocaine, as compared to cocaine base, violates constitutional guarantees of equal protection. However, as defendants themselves concede, "[v]irtually every Federal Court with the opportunity to address the equal protection argument [including this Circuit] has rejected it" (Pl.Br.21). We are not persuaded to depart from recent Circuit precedents rejecting the equal protection claim. See, e.g., United States v. Chandler, 996 F.2d 917 (7th Cir.1993) (defendant failed to establish discriminatory intent of sentencing scheme, which passed muster under rational basis scrutiny); United States v. Lawrence, 951 F.2d 751 (7th Cir.1991) (sentencing scheme is rationally related to Congress' particular concerns about cocaine base). Defendants also urge us to find that the term "cocaine base" is ambiguous and to reject an enhanced penalty under the rule of lenity, but we believe that Congress has defined the substance--and its intention to impose punishment befitting the crime--with appropriate clarity.
 
 
 22
 Beck does not discuss why Blanding should not control here. Therefore, Beck has failed to establish that the proscribed sentence for cocaine base is ambiguous or unconstitutional.
 
 
 23
 AFFIRMED.