**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Clinton Elbert McKINNEY,
Defendant–Appellant.**

**No. 96–3699.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1998.

Decided April 30, 1998.

---

Suzanne M. Wissmann (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Ian Brenson (argued), LaGrange, IL, for Defendant–Appellant.

Before: MANION, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Clinton Elbert McKinney was charged, tried, and convicted of possession of crack cocaine with intent to distribute and unlawful possession of a firearm. He argues that the search warrant that police obtained for his business and residence was not supported by probable cause and that the Government's evidence was insufficient to support the jury's verdict as to unlawful possession of a firearm. We affirm.

## I. HISTORY

Detective Ken Berry works for the East St. Louis Police Department. Detective Berry received an informant's tip that McKinney was selling crack cocaine from the building where McKinney lives and runs his business, Shay Shay's Variety Store. Detective Berry had never met this informant or used him in other investigations. He set up three controlled buys, each conducted in about the same way: Detective Berry and other officers would meet with the informant at a prearranged location. Detective Berry would do a pat-down search of the informant, then send him in to Shay Shay's with marked currency to buy crack. The informant returned each time without the money and with crack. Detective Berry would pat down the informant again. The informant told Detective Berry that two times he exchanged the money for crack with McKinney in McKinney's back room office. The third time the exchange took place in the front of the store near the counter. Detective Berry recorded all this information in an affidavit and applied for a search warrant for Shay Shay's. The Illinois Circuit Court for St. Clair County issued the search warrant.

Detective Berry and thirteen members of the Illinois State Police Tactical Response Team executed the search warrant. As they approached the building they shouted, "State Police, search warrant." They continued yelling this announcement as they entered the building. They found two women in the store, secured them, and entered the living area. There they found Milton Heard on the sofa and McKinney bent over in the corner with his back to the police. The police could not see his hands. One officer "heard the unmistakable sound of a weapon hitting the floor." Tr. of Proceedings at 15, No. 95–CR–30128–PER (S.D.Ill. July 9, 1996) [hereinafter Trial Tr.]. He ordered McKinney onto the floor face down, and McKinney obeyed. The officer found a loaded, cocked revolver in the corner within two feet of McKinney's head and three to five feet from Heard's position on the sofa.

As an officer put McKinney in the squad car, McKinney said, "if the right person had come through that door first, I would have shot him." Trial Tr. at 51. McKinney later admitted making that comment, but he said he was merely angry and had not really intended to shoot anyone.

Officers searched the building. They found over 70 grams of crack, over $1,000 in currency including some of the marked currency, and a scale with white residue on it.

At the station, McKinney made a statement in which he admitted selling crack from his building for the last eight months. He also admitted that the crack the police found there belonged to him and that some of the cash was drug money. He did not, however, admit owning the gun. He said the gun belonged to Heard. He said he had been looking at the gun, but he had given it back to Heard before the police entered.

The State of Illinois charged McKinney with unlawful possession with intent to deliver a controlled substance and armed violence. McKinney moved to suppress the evidence because the warrant was not supported by probable cause. The court held a *Franks* hearing, after which it ordered the state to produce its informant. The state did not, and the court suppressed the evidence. The state appealed, and the Illinois Appellate Court reversed the circuit court's decision and remanded the case. However, the state dropped the charges when a federal grand jury returned an indictment.

In federal court McKinney moved to suppress the evidence seized during the search and the statements he made to police because the warrant lacked probable cause. The district judge held a hearing where Detective Berry testified but the informant did not. The judge denied the motion to suppress but ordered the Government to reveal the identity of the informant. The Government identified him as McKinney's brother, Earl McKinney. The case proceeded to trial, and a jury convicted McKinney of possession with intent to distribute and being a felon in possession of a firearm. McKinney appealed.

McKinney's trial counsel withdrew and new counsel was appointed to handle his appeal. The new counsel submitted an *Anders* brief. McKinney responded to the *Anders* brief and asked for new counsel. We obliged, and we specifically asked counsel to address, among other issues, the importance of a document submitted by the informant which, if true, might show that Detective Berry acted maliciously or recklessly in pursuing the search warrant. We now address the issues raised by McKinney's current counsel.

## II. ANALYSIS

### A. *Motion to Suppress Evidence and Statements*

■ McKinney moved to suppress the evidence police seized during the search as well as the statements he made to police during and after his arrest. He argues that the Illinois magistrate erred in issuing the search warrant because police lacked probable cause to believe there was evidence at Shay Shay's, so the evidence resulting from the search and arrest should not have been admitted against him at trial. The district court denied his motion because it found that probable cause supported the search warrant.

■ We review probable cause determinations *de novo*. *See Ornelas v. United States*, 517 U.S. 690, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). However, we will "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by" the Illinois police and circuit court. *Id.*

■■ A search warrant should not issue except on probable cause that evidence of a crime is currently located at a particular place. When that probable cause rests on an informant's tip, the magistrate must determine from the totality of the circumstances whether probable cause exists. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). This totality includes such things as "an informant's veracity, reliability, and basis of knowledge," *id.* at 230, 103 S.Ct. at 2328 (quotation marks omitted), but we have also "consistently recognized the value of corroboration of details of an informant's tip by independent police work," *id.* at 241, 103 S.Ct. at 2334.

We have noted some factors that can help determine whether a lower court (state or federal) had sufficient information in the record before it to issue a warrant:

1. Whether the informant made firsthand observations;

2. The degree of detail the informant provided;

3. Whether police corroborated the informant's story with independent investigation;

4. Whether the informant testified at the probable cause hearing.

*See United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir.1995), *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996). This is by no means an exhaustive list; these

are merely factors we have found useful in the past.

We applied these factors in the factually similar case of *United States v. Reddrick*, 90 F.3d 1276 (7th Cir.1996). In *Reddrick*, an informant contacted police about drug activity at a certain house. He told police he had just been in the house that morning and there were thirteen kilograms of cocaine there. *See id.* at 1279. The informant did not testify at the probable cause hearing. *See id.* at 1280. Applying the *Lloyd* factors, we found that the informant made firsthand observations but provided no detail and did not testify at the probable cause hearing. *See id.* Standing alone, this tip could not support probable cause. However, the informant made three controlled buys for police, strongly corroborating his story. We held that the officer's testimony concerning the controlled buys plus the informant's earlier information together supported a finding of probable cause and the issuance of the warrant. *See id.* at 1281.

The situation in this case is very similar. Detective Berry averred in his affidavit that the informant conveyed firsthand observations to police, but the affidavit did not convey much detail from the original tip. Nor did the informant testify at a probable cause hearing. But like in *Reddrick*, the informant here helped corroborate his own story by participating in three separate controlled buys. During the buys he was able to support his original tip with a few details, such as the fact that two of the exchanges took place in McKinney's back office and that crack was kept in McKinney's desk.

▮ McKinney complains that the informant was new to police and untested, and therefore unreliable. While it always helps to use a tried and true informant, police do not always have that luxury. Rather than simply relying on the informant's tip alone, however, police boosted the informant's reliability with the controlled buys. Controlled buys add great weight to an informant's tip. *See, e.g., United States v. Singleton*, 125 F.3d 1097, 1104 (7th Cir.1997), *cert. denied sub nom. Cox v. United States*, ── U.S. ──, 118 S.Ct. 898, ── L.Ed.2d ── (1998).

McKinney also complains that police did not supervise the informant adequately during the buys, and therefore the informant is still not very reliable. While police did not conduct a full search of the informant before the buys, they did pat him down before and after he went into McKinney's business. Police did not fit the informant with any radio or video surveillance equipment, but they did watch him go into and out of the business, and each trip took only four to fourteen minutes. While police can always do more to boost reliability, a probable cause determination does not require the same amount of certainty as a guilty verdict. We require only a reasonable probability that evidence of a crime can be found at a certain location. McKinney is right that the informant's information alone could not suffice, but the informant's information plus the police investigation via three controlled buys sufficiently supported the Illinois Circuit Court's finding of probable cause.

### B.  *Sufficiency of the Evidence as to Unlawful Possession of a Firearm*

▮ McKinney argues that the Government's evidence was insufficient to support a guilty verdict on the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). We usually ask ourselves not whether we would have convicted the defendant, but whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In this case, though, McKinney's lawyer did not move for a judgment of acquittal at the close of the Government's case or at the close of the evidence, so we review for plain error only. *See United States v. Syverson*, 90 F.3d 227, 299–30 (7th Cir.), *cert. denied*, ── U.S. ──, 117 S.Ct. 435, 136 L.Ed.2d 333 (1996). Plain error means "it must be 'plain' (i.e., clear or obvious) that there was insufficient evidence." *United States v. Meadows*, 91 F.3d 851, 855 (7th Cir.1996). We will reverse only "if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction

would be shocking." *United States v. Wright,* 63 F.3d 1067, 1072 (11th Cir.1995) (citations and internal quotation marks omitted), *cited with approval in Meadows,* 91 F.3d at 855.

The Government did not prove that McKinney owned the gun or that they discovered him holding the gun. Rather, the Government showed that McKinney had constructive possession of the gun when they entered the business to execute the search warrant. Constructive possession requires proof that a person has the capability and the intent to exercise dominion and control over a gun without having actual possession. *See, e.g., Lloyd,* 71 F.3d at 1266.

The Government relies on four facts as the basis for the jury's verdict. First, when the police entered McKinney's business they heard what sounded like a gun dropping to the floor. Second, after they restrained McKinney, they found the loaded and cocked gun about two feet from his head. Third, as police were leading McKinney out to the police car, McKinney said, "if the right person had come through that door first, I would have shot him." Trial Tr. at 51. Finally, McKinney later admitted that before officers entered his business, he had been holding the gun and looking at it.

We find no plain error here. The record is not devoid of evidence of guilt. The Government showed McKinney's intent to exercise dominion and control with evidence that the gun fell to floor after officers entered and that they found the gun near McKinney. The jury was entitled to infer that McKinney had been holding the gun just before the officers entered and that he could have resumed possession had officers not restrained him. The jury was equally entitled to infer from McKinney's angry comment that he was holding the gun just before officers entered, even though McKinney later said he had not meant what he said. McKinney's later admission that he was indeed holding the gun earlier only bolstered the jury's decision that McKinney had the capability to exercise dominion and control over the gun when officers entered. While the evidence of constructive possession is not overwhelming, it sufficiently supported the jury's verdict, and we cannot say the conviction is shocking. *See Meadows,* 91 F.3d at 855.

## C.  Franks *Hearing*

McKinney's first appointed appellate counsel filed an *Anders* brief. When we appointed new counsel to represent McKinney, we asked him to address the impact of a written statement signed and notarized by the informant who cooperated with police in investigating McKinney. The document ("Document 200") makes serious allegations against Detective Berry, whose affidavit formed the basis of probable cause for the search warrant. While at first glance Document 200 seems to warrant at least an investigation, McKinney's trial counsel (since withdrawn) failed to move for a *Franks* hearing.

McKinney's present counsel asserts that Document 200 indeed warranted a *Franks* hearing but that this claim must now be styled as one for ineffective assistance of counsel. A *Franks* hearing might have resulted in suppression of the seized evidence and McKinney's statements, so a successful claim for ineffective assistance of counsel, mandating a new trial, is at least possible. Present counsel recognizes our precedent that clearly prefers ineffectiveness claims to be brought collaterally via a motion in the district court under 28 U.S.C. § 2255 and not on direct appeal. Although when we appointed present counsel we asked him to address Document 200, he asks us specifically not to resolve the ineffective assistance claim so that he can raise the claim via § 2255. The Government, on the other hand, wants us to resolve the ineffective assistance claim now on direct appeal. We decline to examine the claim because the defendant has not asked us to and because the record is devoid of any explanation for trial counsel's actions. *See, e.g., United States v. Dukes,* 727 F.2d 34, 40 (2nd Cir.1984) (holding that if the trial record does not contain the reasons for trial counsel's tactical decisions, the appropriate vehicle for an ineffectiveness claim is § 2255, not direct appeal). McKinney may proceed under § 2255.

For the foregoing reasons the decisions of the district court were correct and the conviction of Clinton McKinney is AFFIRMED.