UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth HAMMOND,
Defendant-Appellant.

No. 85–8284
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1986.

A. Leroy Toliver, Atlanta, Ga., for defendant-appellant.

Charles E. Brown, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and HILL and ANDERSON, Circuit Judges.

HILL, Circuit Judge:

## FACTS

This appeal arises from the following facts. On September 5, 1984, appellant Kenneth Hammond was indicted by a federal grand jury on the following charges: (1) conspiracy to distribute Didrex, a Schedule III drug, in violation of 21 U.S.C. § 846; (2) 116 counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1); and (3) aiding and abetting in the above offenses in violation of 18 U.S.C. § 2. Co-defendant Dr. Fred Henson, indicted on the same offenses, was charged with an additional 96 counts of unlawfully distributing controlled substances. On January 25, 1985, two days after trial began, co-defendant Henson entered a plea of guilty as to the conspiracy count and two of the substantive counts. Trial then resumed as to appellant alone, and on February 13, 1985, Hammond was found guilty of the conspiracy count and 113 of the 116 substantive counts.

The evidence introduced at the trial showed that appellant was a pharmacist operating a drug store in the community of Hiram, Georgia. The illegal distribution of which appellant was convicted concerned prescriptions for controlled drugs filled by Hammond issued for what the jury determined to be no legitimate purpose. All of the relevant prescriptions were written by Henson, a Hiram physician whose office space was located next door to Hammond's drug store, Hiram Drugs.

## DISCUSSION

### Issue I

■ We first examine appellant's contention that the evidence was insufficient to support his conviction on the conspiracy or substantive counts. Evidence introduced at trial clearly established Dr. Henson issued the prescriptions of which we are concerned for no legitimate medical purpose. Commencing in the late 1970's, Dr. Henson began writing prescriptions for controlled substances, primarily Didrex, on a large scale basis. Over 90% of the prescriptions written by Henson were for controlled substances, a figure expert testimony indicated was outrageously high and dramatically out of line with the practice of other physicians. Further, Henson's patient volume was extraordinary. Testimony of witnesses described the parking lot in front of Hiram Drugs and Henson's office as a "sea of cars." Approximately 90% of Henson's patients were from outside the county, and witnesses described scenes of patients arriving by the car load from various counties across North Georgia and Alabama. Henson saw his patients only briefly and during office hours averaged issuing a prescription for a controlled substance every five minutes. Often the scheduled drugs were dispensed to patients for periods of years when established medical pro-

cedures would have limited distribution to a matter of weeks. Further, Henson apparently ignored the practice of individualized dosing, a practice routinely followed in the medical profession of gradually increasing the amounts of the dosage over a period of time until the required level is obtained. This course of conduct led physicians testifying at the trial as expert witnesses to conclude that Henson's practice was completely outside the usual course of medical practice and not for any legitimate purpose.

Other evidence introduced at trial indicated that appellant knowingly participated in and furthered Henson's scheme by filling improperly issued prescriptions even though aware they were being issued for no legitimate purpose. Hammond conveniently rented to Henson for a small sum office space next door to Hiram Drugs from which Henson operated his office. In turn, the great bulk of prescriptions issued by Henson, particularly for the controlled drug Didrex, were filled by Hammond.[1]

Thus, serving as the pipeline through which Henson's patients could obtain their "prescribed" drugs, Hiram Drugs began functioning as a virtual wholesaler of the controlled drug Didrex. The sales records of Upjohn Company, the manufacturer of Didrex, reveal that in a sales territory consisting of 66 pharmaceutical customers, Hiram Drugs purchased 82.3% of the Didrex sold in the territory. In its North Georgia district, consisting of and including Atlanta and Augusta, Hiram Drugs purchased 35.2% of all Didrex sold. In fact, of the 1,174 retail pharmacies and 21 wholesale distributors representing Upjohn's entire market for Didrex in the state of Georgia, Hiram Drugs purchased 19.5% of all the Didrex sold, though located in a town with a population of only 1200.

Testimony regarding two other pharmacies located in the Hiram area illustrates perhaps even more clearly the disproportionate prescription volume. For the year 1982 Reed Drug Store and Revco Drugs purchased approximately 2700 and 5200 Didrex tablets respectively. Meanwhile, during the same year Hiram Drugs purchased approximately 512,500 tablets of Didrex from Upjohn. Even this volume failed to satisfy Hammond's need for Didrex, however, so that during this same period he purchased additional amounts of Didrex from wholesalers. Hammond's purchases finally reached such a volume that in November, 1983, Upjohn discontinued selling Didrex to Hiram Drugs.

Experts testified that such an outrageous volume would ·have alerted any pharmacist that prescriptions were being improperly issued. These experts also testified that the lack of individualized dosing should have further alerted Hammond. Hammond admitted he knew that 80 to 90 per cent of Henson's prescriptions were for persons outside of Paulding County and that 90 per cent of those were for controlled substances. He further testified that he was aware Henson had lost his medical license for a period of time in 1973, and that this sanction was related to prescriptions issued for controlled substances. Yet Hammond admitted knowing the law required him not to fill prescriptions written for no legitimate purpose. Based upon facts and figures presented at trial, pharmacists testifying as experts concluded that appellant Hammond was encouraging diversion or nonlegitimate medical use of controlled substances. The evidence clearly warranted the finding that Hiram Drugs, with the knowledge and participation of its owner, Kenneth Hammond, acted as a conduit for the improper dispensing of controlled substances.

### Issue II

■ Appellant contends that the trial court improperly denied a judgment of acquittal as to the 49 counts involving prescriptions which, though filled at the appellant's drug store, were not filled by the appellant personally. As previously discussed, evidence introduced at trial indi-

1. For example, one year Hammond filled approximately 6100 of the 6500 Didrex prescriptions Henson issued.

cated that appellant was on notice of Henson's incredible prescribing pattern for controlled substances, that these practices brought "patients" from across North Georgia and Alabama, and that as a result Hiram Drugs was purchasing a fantastic volume of the drug Didrex. This evidence was sufficient to warrant a jury finding that appellant knew Henson was writing prescriptions for no legitimate purpose and as sole proprietor chose to encourage and stimulate Henson's unlawful venture by furnishing his pharmacy as a conduit to supply the extraordinary demand created by Henson's unlawful prescriptions. The fact that Hammond did not personally sign or initial each Henson prescription filled at his pharmacy is not dispositive inasmuch as appellant controlled the pharmacy and the relief pharmacists which he occasionally employed. It is not necessary in order to convict a defendant of aiding and abetting to show that he participated in every act of the criminal venture, rather only that the defendant "was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his action to make it succeed." *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir.1981) (quoting *United States v. Martinez*, 555 F.2d 1269, 1272 (5th Cir.1977)). Aware that Henson was issuing prescriptions for no legitimate purpose and that the overwhelming majority of these prescriptions were being filled at Hiram Drugs, appellant deliberately chose to continue to allow Henson's prescriptions to be filled at his drug store. The evidence presented was sufficient to warrant the judge's denial of acquittal as to the 49 prescriptions which, though not signed by the appellant, were filled at appellant's drug store.

### Issue III

■ Appellant alleges the trial court erred by denying his motion for severance based on improper joinder, pursuant to Fed.R.Crim.P. 8(b), and alternatively that severance should have been granted because of improper joinder in violation of Fed.R.Crim.P. 14. Appellant's allegations of prejudice and misjoinder concern the 96 counts on which Henson alone is charged, offenses involving prescriptions written by Henson which were not filled by the appellant or at the appellant's drug store. Looking first to appellant's Rule 8(b) claim, we note that a question regarding proper application of Rule 8(b) is a matter of law, and thus completely reviewable on appeal. However, this court broadly construes the rule requiring proper joinder in favor of the joinder presented in the indictment. *United States v. Davis*, 773 F.2d 1180, 1181 (11th Cir.1985). Further, it is well established that substantive offenses arising out of a conspiracy may be joined even though not all defendants are charged with every substantive charge since the conspiracy provides the common link connecting the offenses. *Gordon v. United States*, 438 F.2d 858, 878 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 143, 30 L.Ed.2d 56 (1971). The fact that substantive offenses emanate from a single, central conspiracy is a sufficient indication that substantial identity of facts or participants exists among the offenses. *United States v. Kopituk*, 690 F.2d 1289, 1313 (11th Cir.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). The offenses wherein Henson, only, was charged were part of the same series of acts and transactions for which Hammond and Henson were indicted together, namely the ongoing conspiracy to dispense and distribute large quantities of drugs illegally. Accordingly, the counts were properly joined under Rule 8(b).

■ With regard to appellant's Rule 14 motion for severance, the decision on such a motion is entrusted to the sound discretion of the trial court and is reviewable only for abuse of that discretion. *United States v. McCulley*, 673 F.2d 346, 349 (11th Cir.), *cert. denied*, 459 U.S. 852, 103 S.Ct. 116, 74 L.Ed.2d 102 (1982). To warrant severance under the rule, appellant must demonstrate that inclusion of the counts in question resulted in clear and compelling prejudice "which could not be alleviated by the trial court and that he was unable to obtain a fair trial." *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. Unit B

1981),[2] *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982). The district court carefully admonished the jury as to the use and admissibility of evidence pertaining to the prescriptions filled at other stores, instructing it was to be used only to demonstrate how Dr. Henson carried on his practice. The trial court instructions served adequately to protect the appellant from unfair prejudice. *United States v. Zicree,* 605 F.2d 1381, 1389 (5th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

### Issue IV

■ Appellant objects to attempts by the prosecution to elicit from Henson testimony regarding what appellant alleges were extrinsic facts with which the prosecution intended to demonstrate appellant's bad character in violation of Fed.R.Evid. 404. The testimony objected to concerned whether one Audrey Fowler had sexual intercourse with Henson in exchange for drugs and whether Henson had used various means, including offers of money, in an attempt to persuade Fowler not to testify. Fowler, in fact, had to be arrested before her testimony could be obtained.

The Government elicited this testimony from Henson not to demonstrate the appellant's bad character in violation of Fed.R. Evid. 404(b), rather to illustrate that Henson attempted to influence the testimony of Audrey Fowler. In response to the district court's inquiry following a request for a limiting instruction, the Government answered:

> What I'm going to show, your honor, is this person, up until that time, was trying to get Audrey Fowler not to testify against him. And his actions are totally non-legitimate and he was a drug pusher and distributor and *he is trying to get her not—and he stated that he doesn't recall having this discussion with her trying to get her not to testify.*

Courts may consider evidence of attempts to influence a witness as relevant in showing a consciousness of guilt. *See United*

States v. Gonzalez, 703 F.2d 1222, 1223 (11th Cir.1983). Henson's guilt was obviously relevant to the conspiracy charge against appellant. Thus, the relevant inquiry is whether pursuant to Rule 403 the danger of unfair prejudice substantially outweighed the probativeness of the evidence. An appellate court may reverse the trial court's decision in this area only if he clearly abused his discretion. *United States v. Terebecki,* 692 F.2d 1345, 1350 (11th Cir.1982). After reviewing the record, we find no such abuse of discretion. Appellant's contention of error is without merit.

### Issue V

Finally, appellant alleges that the trial court erred in not giving the requested charge regarding the arrest powers of agents of the Georgia Drug and Narcotics Agency, as set forth in O.C.G.A. § 26–4–51, and in charging that action or inaction by the Medical Board and/or the State Board of Pharmacy was no defense to the crimes charged. A district court's refusal to deliver a defendant's requested instruction constitutes reversible error only if the requested instruction is correct, is not substantially covered by other instructions, and addresses some issue so vital to the proceeding that failure to give the requested instruction seriously impairs the defendant's ability to defend. *United States v. Stone,* 702 F.2d 1333, 1339 (11th Cir.1983). Appellant asserts that as the agents were empowered to arrest him when surveying Henson's prescriptions at Hiram Drugs, in August of 1982, that this somehow operates as a defense to the present charges against him, and thus the instructions regarding the arrest powers of the agents were necessary. Whether or not probable cause existed to arrest the appellant at various stages of the investigation, however, is irrelevant to appellant's guilt or innocence. Thus, the failure to give the instruction requested could not operate to impair seriously the defendant's ability to

---

**2.** Decisions rendered after October 1, 1981, by a former Fifth Circuit Unit B panel are binding on this court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

defend. *United States v. Stone,* 702 F.2d at 1339.

■ The trial court gave the following instruction regarding the effect of action or inaction on the part of a state board:

The failure of the state to act or the failure of any supervisory board or body under state law to act is not a defense to a criminal charge pending in this court. Such failure to act by such authorities may be considered by you, the jury, only upon the issue of the defendant's intent, if you find that it impacted upon his intent.

The action of a state board or the failure of the state board to act is not a defense to a crime charged under the laws of the United States of America and has no bearing upon this case, except as it may impact or may have impacted upon intent as to the defendant in this case; otherwise, the inaction of any state authority is immaterial to this case.

This instruction adequately stated the law and sufficiently apprised the jury that action or inaction on the part of state authorities could be considered on the issue of appellant's intent. Having determined that all of appellant's contentions of error are without merit, the conviction of the appellant is

AFFIRMED.