**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodrigo VASQUEZ, Defendant–Appellant.**

No. 89–5004
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 22, 1990.

Terry L. Lindsey, Carol E. Herman, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

Defendant Rodrigo Vasquez appeals his conviction for conspiracy to possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. § 846. Vasquez contends that the trial court committed reversible error in admitting evidence of threats against a government confidential informant made by a co-conspirator, and that the properly admitted evidence was insufficient to show that Vasquez had joined the conspiracy. We affirm.

Considered in the light most favorable to the government, the evidence presented at trial showed the following: Special Agent Paul Grimal of the United States Customs Service received information that crew members aboard the vessel NIKOS had been recruited by organized smuggling groups to import cocaine into the United States. In a typical transaction, cocaine would be placed on the NIKOS in the care of a crew member. When the NIKOS arrived in the United States, the crew member would contact a designated individual. Upon delivery of the cocaine, the designated individual would pay the crew member for his efforts.

Agent Grimal arranged to have a confidential informant (CI) hired as a crew member on the NIKOS. When the NIKOS was docked in Colombia, the CI was introduced to Gustavo Restrepo. Restrepo recruited the CI to take twenty kilograms of cocaine onto the NIKOS and deliver them to a man named "William" upon the NIKOS's arrival in Miami, Florida. Restrepo gave the CI a phone number to use to contact "William", and told him he would be paid $400 per kilogram upon delivery of the cocaine to "William". When the NIKOS arrived in Miami, the CI contacted the U.S. Customs Service, and Customs agents seized the cocaine.

Under the direction of Agent Grimal, the CI made several phone calls to the telephone number given him by Restrepo, and met with several individuals, including defendant Vasquez, for the purpose of arranging a "delivery" of the cocaine. The phone calls and all but one of the meetings

were recorded and later transcribed. Agent Grimal and the CI testified at trial that on two occasions the CI spoke on the telephone with a man who identified himself as "Ramon". Ramon indicated that he knew William, and he arranged a meeting between the CI, William, and himself. The government later learned that "William's" true name was Jose Martinez, and that "Ramon" was the code name used by defendant Vasquez. At the first meeting, attended by the CI, Martinez and the defendant, the CI refused to turn over the cocaine until he was paid. Agent Grimal and the CI testified that Martinez and the defendnt told him they did not have the money, and would have to talk to their boss, Restrepo, regarding payment. Agent Grimal and the CI testified that at a second meeting, attended by the CI, the defendant and Restrepo, the defendant and Restrepo attempted to pressure the CI into turning over the cocaine prior to being paid.

The last meeting prior to the arrest of Restrepo, Martinez and defendant Vasquez took place in a restaurant. Upon arriving at the restaurant, the CI saw defendant Vasquez and Restrepo sitting together on a bench across the street. Restrepo approached the CI, and the two men went into the restaurant. Agent Grimal testified that defendant Vasquez remained outside, conducting "counter-surveillance." He testified that defendant Vasquez walked up and down the street, looking all around, including up on rooftops. He carried a book with him, and would momentarily open it, appear to read for a moment, close it again and continue walking and looking around. Meanwhile, inside the restaurant, Restrepo was attempting to increase the pressure on the CI to deliver the cocaine without being paid first. When the CI refused to relent, Restrepo threatened, in graphic detail, to harm the CI and his family. He told the CI that he had two men outside who could do the job right then.[1] Shortly thereafter Restrepo, Martinez and defendant Vasquez were arrested. The government obtained an indictment against Restrepo, Martinez and defendant Vasquez charging them with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Prior to trial Restrepo and Martinez pleaded guilty.

At trial, the government introduced the tapes of all conversations and meetings the CI had in Miami concerning this transaction. Defendant Vasquez was involved in some, but not all, of these conversations and meetings. Because all conversations had been conducted in Spanish, Agent Grimal had the tapes transcribed into English. He testified that he had personally heard the conversations as they happened, and had checked the transcriptions, along with the CI, to ensure that they accurately reflected the conversations. When the tapes were played at trial, the jury was provided with copies of the English translations so that they could follow along.

When the government moved to introduce the tape that contained the threats made by Restrepo in the restaurant, defendant Vasquez objected on the grounds that the graphic threats were highly inflammatory, and the evidence was of little probative value, due to the evidence of his involvement contained in the other tapes and the testimony already provided by Agent Grimal and the CI. He argued that the threats were especially prejudicial to him because he had not been present at the table when they were made, and thus there was no proof that he joined in such threats. The government argued that the threats tended to show how far Restrepo and the others were willing to go to get this cocaine. This is essentially an argument that the threats tend to show the intent element of the offense. Furthermore, during the conversations the men had used code words such as "merchandise", "shoes", or "shirts" to mean cocaine. Evidence that threats were made tended to show that they were actually talking about an illegal transaction, because people conducting legal business transactions do not threaten to kill each other. The government later

---

**1.** Although not emphasized at trial, Martinez was also present outside the restaurant at the time Restrepo made these threats.

argued to the jury in its closing arguments that Restrepo's remark about the two men outside who could carry out the threats immediately tended to show that defendant Vasquez was part of the conspiracy because he was one of the two men waiting outside the restaurant.[2]

On appeal, defendant Vasquez cites cases involving threats made on potential trial witnesses by co-conspirators for the proposition that when there is no evidence that the defendant knew of or participated in the threat, the admission of threats made by co-defendants against potential trial witnesses is error. *United States v. Rosa*, 705 F.2d 1375 (1st Cir.1983); *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979); *United States v. Weir*, 575 F.2d 668 (8th Cir.1978). However, these cases are not relevant to a determination of the admissibility of the threats made by Restrepo in the government's case against defendant Vasquez. These were not post-arrest, pre-trial threats made against witnesses that the government was using to prove the defendant's consciousness of guilt. *See generally United States v. Hammond*, 781 F.2d 1536 (11th Cir.1986). The threats made by Restrepo were statements made by a co-conspirator of Vasquez in the course of and in furtherance of the conspiracy. The government did not contend that defendant Vasquez joined in these threats or that they showed he had a guilty conscience, and instead argued that they tended to prove that defendant Vasquez was a member of the conspiracy, and that the conspiracy's object was to possess the cocaine.

Defendant Vasquez has made no argument that there was insufficient evidence of a conspiracy and that Restrepo and defendant Vasquez were members of that conspiracy to make this co-conspirator statement admissible under Federal Rule of Evidence 801. Neither does he contend that the statement was not made in the course of and in furtherance of the conspir-

acy. Thus, under Federal Rule of Evidence 801(d)(2)(E), they are not objectionable as hearsay. *United States v. Perez*, 824 F.2d 1567, 1572–73 (11th Cir.1987).

Defendant Vasquez argues that the trial court nevertheless erred in ruling these statements admissible under Rule 403. Because of the graphic nature of the threats, which apparently included statements regarding murder and shooting off kneecaps, and the fact that Vasquez was not even present when they were made, Defendant Vasquez argues that these statements were highly inflammatory and prejudicial. While we agree, as did the trial court, that this evidence is prejudicial, we cannot say that the trial court abused its discretion in ruling that the probative value of this evidence outweighed its prejudicial potential. *United States v. Meester*, 762 F.2d 867, 874 (11th Cir.), *cert. denied sub nom. Sawyer v. United States*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). These statements tended to show that defendant Vasquez had joined the conspiracy, and that the object of the conspiracy was to possess cocaine. Defendant Vasquez's defense throughout the trial was that he had not joined the conspiracy, and was merely present at some of the meetings. On cross-examination of Agent Grimal and the CI he attempted to show that he had not made significant contributions to the negotiations over when the CI would be paid for his efforts. After the government rested, he presented two witnesses, one who testified that Vasquez purchased car parts from him, and another, Vasquez's brother, who testified that on the day the threats were made, Vasquez had called him and asked him for a ride, and he had picked him up near the restaurant where these threats were made. In closing arguments, Vasquez argued that he thought he was negotiating over the purchase of some car parts, and that his behavior outside the restaurant was explained by the fact that he was waiting for his brother to come pick him up.

---

2. Defendant Vasquez also contends that because the evidence of the threats was inadmissible, this argument by the prosecutor was improper. We find nothing improper in the prosecutor's argument that Restrepo's comment about the two men outside tended to show that Vasquez was fully involved in the conspiracy. The government did not attempt to show that Vasquez joined in the threats themselves, or was actually willing to carry out such threats.

Thus, the issues of whether Vasquez had joined the conspiracy, and whether the object of the conspiracy was to possess cocaine were clearly in dispute. While the government's need for additional evidence on these issues is relevant to a determination of whether the probative value of the evidence outweighed its potential prejudicial effect, our review of the record does not lead us to conclude that the trial judge abused his discretion in finding that the evidence was of enough probative value to overcome its potential prejudicial effect.

■ We find no merit in defendant Vasquez's contention that the evidence was insufficient for a reasonable jury to find that he had joined the conspiracy to possess with intent to distribute cocaine. Agent Grimal and the CI testified that Vasquez made significant contributions to the negotiations, and tapes of most of the conversations were played. Defendant Vasquez argued to the jury that the transcriptions of those tapes contained errors, specifically that they attributed certain statements to him that were actually made by someone else. He asked the jury to listen to the tapes again, and to compare the voices, and argued that they would see that, in certain instances, where the transcript said that he had said something, that statement was actually made by someone else present at the meeting. These arguments were made on a general level; no reference to specific statements was made. The testimony of Agent Grimal and the CI directly conflicts with defendant Vasquez's contention that he was merely present at these negotiations, and that he thought that the negotiations were over the delivery of car parts. The government's version of Vasquez's involvement was sufficient to show that he voluntarily joined in the conspiracy, and the jury found the government's version of events more credible. Finding no basis upon which to overturn the jury's verdict, we AFFIRM defendant Vasquez's conviction.