[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-14914

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00251-CR-J-20-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRAIG NARRAM WILLIAMS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 24, 2006)**

Before BIRCH and WILSON, Circuit Judges, and ROYAL[*], District Judge.

PER CURIAM:

The appellant, Craig Narram Williams, appeals from his January 16, 2004,

conviction on three counts from a seven-count indictment. Williams was found

_____

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

guilty of Possession of a Firearm by a Convicted Felon (18 U.S.C. §§ 922(g)(1), 924(a)(2)), Possession of Crack Cocaine (less than 5g) with Intent to Distribute (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)), and Possession of Cocaine with Intent to Distribute (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)). The jury acquitted him of counts for Possession of a Firearm in Furtherance of a Drug Trafficking Offense, and Distribution of Cocaine. Prior to trial, the Government had dismissed counts for Possession of Body Armor by a Convicted Felon and Possession of a Firearm in Furtherance of a Drug Trafficking Offense.

The charges against Williams resulted from the execution of a search warrant on May 10, 2003, at a house on 4521 Friden Road in Jacksonville, Florida. Inside the house at the time of the search were Williams and his girlfriend, Stephanie Boardingham. Boardingham testified for the Government at trial. During the search the officers found a Leinad 9mm firearm, a Taurus 9mm handgun, a box containing 31.7 grams of crack cocaine, and baggies containing powder cocaine. The Leinad firearm was concealed in a hole in the wall behind a washing machine. The Taurus handgun and the cocaine were concealed in a hole in the floor underneath a bed in the bedroom, covered by a rug.

On appeal, Mr. Williams raises six claims of error:

(1) That the district court erroneously denied his motion to suppress;

2

(2) That there was insufficient evidence to support his conviction;

(3) That the district court erroneously denied his motion to sever Count Three of the indictment, for Possession of a Firearm by a Convicted Felon;

(4) That the district court erroneously admitted into evidence two photographs of Mr. Williams holding handguns;

(5) That the district court at sentencing erroneously used a prior juvenile conviction to determine that Mr. Williams was a career offender; and

(6) That the Government failed to comply with the notice requirements of 21 U.S.C. § 851 in seeking a sentencing enhancement based on a prior conviction for Possession of Cocaine with Intent to Distribute.

For the reasons set forth below, we AFFIRM the decision of the court below.

## I.      Motion to Suppress

Mr. Williams' primary appeal is from the district court's denial of his motion to suppress, based on a recommendation from the magistrate judge. On appeal of an order on motion to suppress, we review findings of fact for clear error, but review the district court's application of the law to the facts *de novo*. United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000). To determine whether a search warrant was properly issued we must evaluate the information that was before the issuing court, generally in the form of an affidavit from an investigating officer. Whether the facts set forth in an affidavit constitute probable cause is a question of

law to be reviewed *de novo*.  United States v. Miller, 24 F.3d 1357, 1360 (11th Cir. 1994).

In this case, however, we do not rule on whether the search warrant was properly issued or whether there was in fact probable cause, but find instead that the evidence seized was admissible under the "good faith" exception of United States v. Leon, 468 U.S. 897 (1985).  Leon "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause."  United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002).  Under Leon, evidence seized pursuant to a search warrant should be suppressed "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  Id.  Thus, there are only four situations in which evidence seized in the execution of a search warrant will be suppressed:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient--i.e., in failing to

particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid.

United States v. Robinson, 336 F.3d 1293, 1296 (11ᵗʰ Cir. 2002).  At issue in this case are the first and third situations described in Robinson.  Williams contends that the affidavit on which the warrant was based was so lacking in indicia of probable cause as to render official belief in its existence unreasonable, and further contends that the officer who executed the affidavit exhibited a reckless disregard for the truth.  Neither argument is supported in the record.

The record shows that the warrant was issued on May 7, 2003, by a judge of the County Court in Florida's Fourth Judicial Circuit, based on an affidavit by Detective Thomas of the Organized Crime Section, Narcotics Unit, Jacksonville Sheriff's Office.  The warrant was based on information that was provided by a confidential informant and verified by the affiant officer.  In his affidavit, Detective Thomas stated:

> Within the past 10 days your affiant personally took a confidential informant to the [house at 4521 Friden Street] where the confidential informant made a controlled buy of cocaine (powder).  Before the informant entered the above-described [premises], your affiant searched the informant and determined that the informant was not in possession of any controlled substance.
>
> Your affiant then gave the informant money with which to buy a quantity of a controlled substance and watched the informant enter the above-described premises and shortly emerge therefrom.  Said

5

confidential informant then immediately met with your affiant at a prearranged location where said informant turned over the off-white, powdery like substance to your affiant which your affiant recognized to be cocaine (powder). The informant said the substance had been purchased from unknown person or persons, within the above-described [premises] with money furnished by your affiant. The informant also stated that unknown person or persons who sold the off-white, powdery like substance to the informant represented the same to be cocaine (powder). Said confidential informant stated that additional quantities of the substance were observed in the above-described premises after the purchase was made. Based on this information, your affiant believes that an additional quantity of cocaine (powder) can be found within the said premises.

Your affiant conducted a field test on the off-white, powdery like substance. The results of the test showed the substance to be cocaine (powder).

At all times pertinent hereto, the confidential informant was in plain view of your affiant except for the brief time that the confidential informant was inside the above-described premises.

Whether or not actual probable cause existed, the affidavit sets forth sufficient indicia of probable cause to justify a reasonable belief in the warrant's validity. In evaluating the information set forth in Detective Thomas' affidavit, the issuing judge faced a close call. On one hand, there is no information in the affidavit as to the identity or reliability of the confidential informant ("CI"), and there is much information in the record, outside the four corners of the affidavit, to indicate that he was not reliable. On the other hand, the affidavit does not rely

6

primarily on statements of the CI, but on observations by Detective Thomas himself, who arranged and monitored a controlled buy conducted by the CI.

With regard to the reliability of the informant, it is clear from the record that the CI was not in fact a reliable informant. The informant testified at trial. There were numerous inconsistencies in his testimony. Further, his testimony revealed that he had been in jail himself on pending drug charges, and had been released in order to act as an informant in exchange for more lenient treatment. Prior to the controlled buy in this case, he had not provided any information to the police. During the time he was released to work with the police, he continued to use and sell drugs himself. Based on the verdict, it is clear that the jury found the informant's testimony unreliable. Williams was acquitted on the distribution of cocaine count, a charge that depended entirely on the credibility of the informant's testimony that he identified Williams several months later as the unknown man from whom he purchased cocaine during the controlled buy.

It is not clear that the reliability of the CI was a necessary element of probable cause in this case. The primary basis of probable cause set forth in the affidavit is not a statement from the CI, but rather the controlled buy conducted by the CI in Detective Thomas' presence. Thus, the value of the CI in this instance derives not from what he told the investigator, but from what he did for the

7

investigator.  Immediately prior to the buy, Detective Thomas searched the CI and determined that he did not possess any drugs.  Detective Thomas observed the CI as he went into and came out of the house on Friden Street, and thus was aware that the CI had no opportunity to obtain drugs from any other source.  The CI entered the house with money and no drugs and came out with drugs and no money.  From his own observations alone, then, without relying on a single hearsay statement from the CI, Detective Thomas had adequate reason to believe that there was probable cause to support a search warrant.

The Supreme Court has prescribed a "totality of the circumstances" approach for evaluating search warrants.  See Illinois v. Gates, 462 U.S. 213 (1983).  Gates concerned an affidavit based primarily on information from an anonymous informant, corroborated in certain details by police surveillance.  In reversing a district court's order granting a motion to suppress, the Supreme Court rejected any rigid tests for evaluating such information and observed that "[i]nformants' tips . . . come in many shapes and sizes from many different types of persons."  462 U.S. at 232.  In some cases, an informant is an anonymous tipster who calls the police with information.  In other cases, an informant may be an "honest citizen" who has never given information to the police before, but has knowledge of some particular situation.  In still other cases, an informant may be a fellow criminal who regularly

8

provides information to the police for money, or to obtain more favorable treatment with pending charges.

There are various factors that can be considered when assessing the value of an informant's information. A criminal informant, for example, may have a history of cooperation with the police and be "known for the unusual reliability of his predictions of certain types of criminal activities in a locality." Gates, 462 U.S. at 233. In such cases, the informant's reliability may be sufficient to establish probable cause based on his statements alone. In the case of citizen tips, "rigorous scrutiny" of the informant's basis of knowledge may be unnecessary "if an unquestionably honest citizen comes forward with a report of criminal activity--which if fabricated would subject him to criminal liability." Id. at 233-34. In the case of an anonymous tipster, as on the facts in Gates, the reliability of the information may be established by its detail, if supplemented by independent police investigation.

This case, where the reliability of the informant is unknown, is most closely comparable to the case of an anonymous tipster. The information provided is reliable only to the extent that it can be supplemented or corroborated by investigation. Consistent with that requirement for additional evidence, Detective Thomas did not rely solely on the CI's representation that there was cocaine in the

9

house, but instead confirmed it his own independent investigation, through the controlled buy.

Two cases from other circuits are factually similar to this case. In United States v. McKinney, 143 F.3d 325 (7th Cir. 1998), the informant was previously untested and the warrant application did not convey much information from the informant's original tip. Nevertheless, the informant's reliability was boosted by three controlled buys. "Controlled buys," remarked the court, "add great weight to an informant's tip." In the controlled buys, as in this case, the informant was searched before and after entering the premises, and was watched as he entered and left the building. The court concluded with the following observation:

> While police can always do more to boost reliability, a probable cause determination does not require the same amount of certainty as a guilty verdict. We require only a reasonable probability that evidence of a crime can be found at a certain location. McKinney is right that the informant's information alone could not suffice, but the informant's information plus the police investigation via three controlled buys sufficiently supported the Illinois Circuit Court's finding of probable cause.

143 F.3d at 329. In this case, in contrast to McKinney, there was only one controlled buy, rather than three. It is not obvious that this distinction is significant. Based on a reading of McKinney, it would have been reasonable for an

10

officer in Detective Thomas' position to believe that one controlled buy could also provide cause to search the house for illegal drugs.

In United States v. Garcia, 983 F.2d 1160 (1st Cir. 1993), as in this case, the detective's affidavit provided no background as to the informant's reliability, but was based on a single controlled buy. The court found that the affidavit established probable cause because the detective "confirmed the information with which the confidential informant provided him by carrying out a carefully-executed 'controlled buy.'" 983 F.2d at 1167. The controlled buy in Garcia was identical to the controlled buy in this case. The informant was searched for contraband, watched as he entered the apartment, and watched as he emerged from the apartment. He entered the apartment with money and emerged with cocaine. The defendant argued that it was possible that the informant had stashed cocaine somewhere outside the sight of the detectives, in order to "frame" the defendant. The court acknowledged this possibility, but found that it "strain[ed] credulity on a common-sense reading." Id. In this case, it would have been difficult for the CI to obtain cocaine from a source other than inside the house, as he was watched by the detective at all times that he was not inside the house.

We do not today adopt the holdings of McKinney or Garcia, nor do we hold that the CI's tip, confirmed by the controlled buy, was sufficient to create probable

11

cause under the totality of the circumstances. That two other circuit courts have found such information to be sufficient, however, indicates that it was not unreasonable for Detective Thomas to believe in the existence of probable cause and to rely on the warrant as valid. Moreover, because the most significant information in the affidavit was the controlled buy, directly observed by Detective Thomas, we do not find that Detective Thomas omitted information about the CI's reliability out of a reckless disregard for the truth. Detective Thomas never affirmatively represented the CI as reliable and did not rely on the credibility of CI to support his warrant application.

Williams further contends that the passage of time between the controlled buy and the issuance of the warrant made it impossible to establish probable cause that there was still cocaine in the house at the time the warrant was issued. Without ruling on the merits of this staleness argument, we find again that the evidence obtained from the search was admissible pursuant to the Leon good faith exception. It was not unreasonable for Detective Thomas to execute the warrant on the belief that it was supported by probable cause.

Although we are not prepared to hold that the information in the affidavit was fresh enough to establish firmly the existence of probable cause, we do find that the period between the controlled buy and the issuance of the warrant was not

12

so long as to make it unreasonable for an officer to believe in good faith that there was probable cause. Our law concerning staleness, particularly in the context of drug transactions, is summarized in United States v. Bascaro, 742 F.2d 1335, 1345-46 (11th Cir. 1984):

> No mechanical test exists for determining when information becomes fatally stale; rather, staleness is an issue which must be decided on the peculiar facts of each case. In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Protracted and continuous activity is inherent in large-scale drug trafficking operations. In such cases, then, the staleness issue should be construed liberally.

(internal quotations and citations omitted). In this case, the affidavit states that the controlled buy was conducted "within the past 10 days." Subsequent testimony revealed that the buy was conducted the day before the application for the warrant and four days before its execution, but the precise date was not provided in the affidavit.

Although Detective Thomas' affidavit does not set forth any indication that the house was part of a large-scale drug trafficking operation as in Bascaro, it does give reason to suspect that at the time of the controlled buy the house was a location used for the sale of drugs in retail or small distribution amounts. By its

13

nature, drug-dealing is an ongoing activity, not an isolated occurrence. Because selling drugs requires a dealer to establish a supply source and develop a customer base or reputation, it is not something that a person can simply do on impulse. It is reasonable to infer that the use of a house for the sale of drugs will continue over some period of time, as (1) "residency in a house . . . generally is not transitory and ephemeral," United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000), and (2) the location for the sale of drugs will require some consistency so that purchasers will know where to go.

The fact that the informant only observed a small quantity of drugs on the premises does not necessarily suggest that the quantity would be dissipated days later. In the context of a retail establishment, it is reasonable to infer that supplies would be restocked. If a person purchases the last carton of milk from a grocery store on Monday, he may still have probable cause to believe that the store will have milk in stock at the end of the week. Within the context of the sale of drugs, ten days is not an exceptionally long period of time – not long enough, at least, to make it plain to a reasonable officer acting in good faith that there could not have been probable cause for a search warrant to issue. Accordingly, we find that Detective Thomas had a good faith basis for relying on the validity of the warrant.

14

## II.    Sufficiency of the Evidence

In his second enumeration of error, Williams contends that the evidence at trial was insufficient to support his convictions.  Williams contends that the case was purely circumstantial and that the Government failed to present evidence to show that he had actual or constructive possession of the drugs and weapons found in the house at 4521 Friden Street.  A challenge to the sufficiency of evidence is reviewed *de novo*.  United States v. Woodruff, 296 F.3d 1041 (11th Cir. 2002).  We find that there was ample evidence in the record to demonstrate Williams' constructive possession of the drugs and weapons found in the house during the execution of the warrant.

To establish constructive possession, "the government may show ownership, dominion, or control over the contraband itself, or the premises or vehicle in which contraband is concealed."  United States v. Guerrero, 935 F.2d 189, 192-93 (11th Cir. 1991).  The Government presented substantial evidence to show that Williams had dominion or control over the house in which the drugs and weapons were found, was aware of the presence of the drugs and weapons, and had access to them.  At the time of the search, Williams was in the house with his girlfriend, Boardingham.  There was evidence that actual title to the house had been transferred among Williams and various family members, suggesting an attempt to

conceal its ownership. Further attempts to conceal ownership were indicated by testimony that Williams had transferred responsibility for the utilities in the house to a minor nephew.

Substantial evidence as to ownership and control of the house, and as to knowledge of the items hidden throughout the house, came from taped telephone conversations from the jail. In one such conversation, Williams instructed his father to sell the house for "twenty." The following day Williams spoke to his wife, and objected to her suggestions that his sister owned the house. He told his wife that he had paid the taxes and utilities on the house and instructed his wife to "straighten" his sister out.

From his own mouth, it is clear that Williams had primary control over the house and that he was well aware of various hiding places in the house, not only the holes in the floor under the bed and in the wall behind the washing machine, but also hiding places that the police failed to discover. In conversations with his mother, Williams instructed her to secure the house and to recover cash from various hiding places in the house and the back yard to pay for his defense. He also directed his mother to have his wife tell police that the guns were registered in her name and that he didn't know anything about them. In one conversation he described one of the guns, which police initially suspected of having a silencer, as

16

having only an "extension." These conversations can lead to an inference that Williams had knowledge of secret places on the property, knowledge of what was stored in those secret places, and had control over the items stored there.

Constructive possession was further proved by testimony from Williams' girlfriend, Boardingham, who testified on direct examination that she visited Williams at the Friden Street house and sometimes spent the night with him. On one occasion she had seen him carry a gun from the sofa to the bedroom where the hole in the floor was. On cross-examination, however, she testified that Williams did not live at the house and that they spent the night there only when they were working late on a recording. She also testified that she had only seen marijuana in the hole in the floor. These inconsistencies may have resulted from Williams' taped telephone conversation with an unidentified female, whom he directed to send a "little letter" to Boardingham, from a disguised postmark, to encourage her to testify in his behalf. The jury was entitled to believe some parts of her testimony and discount others.

In addition to the evidence above, two photographs were admitted which showed Williams posing with handguns similar to the ones recovered in the search. Williams appeals the admission of these photographs, and that argument is addressed below. We find that the photographs were admissible, and they are

17

additional evidence of his knowing possession of the guns. Even in the absence of those photographs, the evidence of Mr. Williams' control over the house and its contents was sufficient to support a jury's finding that he was guilty beyond a reasonable doubt of possession of the drugs and guns found in the house.

Williams' contention that the insufficiency of the evidence is demonstrated by inconsistent verdicts from the jury is without merit. The verdicts in this case are not necessarily inconsistent. Williams was convicted on the counts of possession of cocaine, possession of crack, and possession of a firearm by a convicted felon, while he was acquitted of possession of a firearm in furtherance of drug trafficking activity and distribution of cocaine. It is conceivable that the jury could have found that Williams possessed the weapon but did not possess it in furtherance of drug activities. At any rate, it is well settled that juries are entitled to reach compromises and that "[c]onsistency in the verdict is not necessary." United States v. Odom, 252 F.3d 1289, 1298 (11th Cir. 2001) (quoting Dunn v. United States, 284 U.S. 390, 393 (1932) (Holmes, J.)). Inconsistent verdicts do not defeat a defendant's conviction, and "'[s]ufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt,' a review that is 'independent of the jury's determination that evidence on another count was

18

insufficient.'" United States v. Veal, 153 F.3d 1233, 1252-53 (11th Cir. 1998) (quoting United States v. Powell, 469 U.S. 57, 67(1984).

## III.    Admission of Photographs

In response to Williams' fourth argument (addressed here in part III because of its connection to the insufficiency of evidence argument), we find that the district court did not err when it admitted into evidence two photographs seized from the house that showed Williams posing with a handgun that appeared to be the same as the gun found in the hole in the floor.  The Government offered the photographs pursuant to Rule 404(b) of the Federal Rules of Evidence, to show that Williams had exercised dominion and control over the gun.  Rulings concerning the admissibility of evidence are reviewed for abuse of discretion.  United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998).

Williams objects that the admission of the photographs portrayed him as "gun-toting lawbreaker," amounted to character evidence, and should have been excluded pursuant to Rule 403.  Williams further argues that the photographs are irrelevant because it is impossible to determine whether the guns in the photographs are the same as the guns charged in the indictment, or even if they are real firearms.  Boardingham testified at trial that the guns in the photographs were "replicas."

Our precedent establishes that the photographs were relevant and admissible under Rule 404(b) as evidence that the plaintiff was in possession of the guns found in the house. This case can be compared with another case in which evidence of a defendant's earlier possession of firearms was offered as proof that he knowingly possessed firearms discovered on a later occasion. In United States v. Jernigan, 341 F.3d 1273 (11th Cir. 2003), this Court affirmed the admission of a defendant's prior convictions involving the possession of a firearm and ruled that those convictions were evidence that logically bore on his knowledge of the presence of a gun in his car at the time he was pulled over. As the Court reasoned, the fact that the defendant "knowingly possessed a firearm in a car on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake." Id. at 1281-82.

The evidence in this case is even more relevant to the crime than the evidence in Jernigan was. In Jernigan the prior convictions involved different locations and different cars. In this case, at least one photograph was taken in the same house where the weapons were hidden. In Jernigan, the prior convictions occurred four and five years prior to the offense in question. In this case, the photographs were taken approximately five months before the search. In Jernigan, there was no evidence that the guns from the prior convictions were the same or

20

similar to the gun the defendant was accused of possessing. In this case the Government contended that the gun in the picture appeared to be the same gun as the one found in a hole underneath the bed. The jury had the opportunity to examine the photographs and the weapon, to consider the testimony of Boardingham that the weapon in the photographs was a replica, and to determine for itself whether it was the same gun.

The photographs were relevant and probative of an important issue in the case, and their prejudicial effect did not outweigh their probative value. Certainly the photographs were no more prejudicial than the prior felony convictions in Jernigan or the similar photographs admitted in United States v. Nixon, 918 F.2d 895 (11th Cir. 1990). The district court gave an appropriate limiting instruction that the jury was to consider the photographs only for the purpose of establishing Williams' state of mind or absence of mistake or accident. We cannot find that the admission of these photographs was an abuse of discretion.

## IV. Denial of Motion to Sever

Williams contends that the district court abused its discretion by denying his motion to sever the count alleging possession of a firearm by a convicted felon, and that he was prejudiced by evidence of his previous felony conviction. At trial, Williams stipulated that he was a convicted felon, and the jury was not given

21

details of the nature of his prior offense.  We review the denial of the motion to sever for abuse of discretion, United States v. Hammond, 781 F.2d 1536, 1539 (11th Cir. 1986), and affirm the order of the district court.

In this case, the initial joinder of the possession of a firearm by a convicted felon offense with the other offenses in the indictment was proper under Rule 8(a) of the Federal Rules of Criminal Procedure.  Rule 8(a) permits the joinder of offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  The felon-in-possession charge was of the same or similar character as the other firearms charge, since both involved the possession of the same weapons at the same time.  The charge was based on the same act or transaction as the drug charges, since the weapons and the drugs were found at the same time and one of the weapons was found in the same place as the drugs.

Even where joinder is proper under Rule 8(a), Rule 14 permits relief from prejudicial joinder, including severance of counts, "if the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant."  We "will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection."  United States v. Walser, 3 F.3d 280, 285 (11th Cir. 1993).  This Court has affirmed

22

the denial of motion to sever in a factually similar case. In <u>United States v.</u>

<u>Bennett</u>, 368 F.3d 1343 (11th Cir. 2004), <u>vacated on other grounds</u>

(sentencing/Booker issues), 125 S. Ct. 1044 (2005), the district court refused to

sever a felon-in-possession-of-firearms charge from other counts for drug

trafficking and attempting to kill an official in the performance of official duties.

The Court found that the defendant had failed to meet his "heavy burden" of

demonstrating compelling prejudice. Any prejudice was mitigated because the

parties stipulated to the felony and "the jury did not hear any details about the prior

bad act, thereby minimizing the possibility that the jury would improperly consider

the evidence of the prior conviction when deliberating about the other felony

charges." 368 F.3d at 1351. In addition, prejudice was mitigated by a jury

instruction instructing the jury to consider the prior conviction only with regard to

the felon-in-possession charge and disregard the prior conviction in considering the

other charges.

In this case, as in <u>Bennett</u>, there was a stipulation as to the conviction and the

jury had no details about the nature of the prior conviction. There is no indication

that the parties dwelt excessively on the prior conviction during the course of the

trial. The jury charge, however, was less specific than the charge in <u>Bennett</u>. The

district court simply charged the jury to consider the evidence as to each count

23

separately and charged that a verdict of guilty or not guilty as to any one count should not affect the verdict as to any of the other charges. The charge did not specifically instruct the jury to consider the prior conviction only in connection with the felon-in-possession charge.

It is generally better practice to charge the jury specifically to limit its consideration of the prior conviction to the felon in possession charge. In Panzavecchia v. Wainwright, 658 F.2d 337 (5th Cir. Unit B, 1981), the Court found that the failure to sever a felon-in-possession count made a trial fundamentally unfair. There were "no proper instructions to the jury to relate the evidence of the counterfeiting conviction only to the firearm possession charge." 658 F.2d at 341. The trial judge in that case "merely cautioned the jurors to consider each charge separately." United States v. Jiminez, 983 F.2d 1020, 1022 (11th Cir. 1993). Panzavecchia does not mandate reversal based on the deficient jury charge alone, however. The Court observed that great emphasis was placed on the prior conviction during the course of the trial. In this case, by contrast, there were no repeated references to the prior conviction. The degree of prejudice from the deficient jury charge was much smaller. The jury's verdict of acquittal on two counts demonstrates that the jury followed the judge's instructions and considered

24

each count separately. On these facts we cannot find that the district court abused its discretion in denying the motion to sever.

## V.    Sentencing Issues

### A.    Criminal History

In his fifth argument, Williams contends that the district court erred in using an armed robbery conviction that occurred before his eighteenth birthday to calculate his criminal history and establish his "career offender" status under USSG § 4A1.2(d). Williams argues that the prior conviction should not have been considered because it occurred more than five years before the offense in this case. This argument is completely without merit.

"This Court reviews the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts *de novo*." United States v. Anderson, 326 F.3d 1319, 1326 (11th Cir. 2003). In United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005), this Court held that pre-Booker standards for reviewing application of the sentencing guidelines still apply post-Booker because (1) the "reasonableness" standard applies to the ultimate sentence imposed, not to the application of individual guidelines; (2) Booker did not affect 18 U.S.C. § 3742(f), which requires remand of any case in which the district court incorrectly applies the guidelines; and (3) the requirement that district courts still "consult" the

guidelines necessarily means that the court must correctly calculate the guidelines range.

Section 4B1.1(a) of the sentencing guidelines sets forth the definition of a "career offender" for sentencing purposes:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

If a defendant is found to be a career offender under Section 4B1.1(a), the defendant's offense level is enhanced under Section 4B1.1(b) if the offense level is greater than the otherwise-applicable offense level.

One of the prior offenses that formed the basis of Williams' career offender status was an armed robbery conviction that occurred prior to Williams' eighteenth birthday. Section 4A1.2(d) of the guidelines provides as to offenses committed prior to age eighteen:

> (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence.
>
> (2) In any other case,
>
> > (A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if

the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

In this case, the armed robbery conviction in question was an adult conviction with a sentence of imprisonment for a term exceeding one year and one month. As such, the five year limitation of section 4A1.2(d)(2) does not apply. It is clear from the language of the guidelines that the five-year "look back" limitation applies only to lesser sentences. Because the conviction falls under section 4A1.2(d)(1), there is no time limitation on its application to the career offender consideration.

## B.      Notice of Sentencing Enhancement

In his final argument, Williams contests a sentencing enhancement based on a prior conviction for possession of cocaine with intent to distribute, alleging that the Government failed to give adequate notice as required by 21 U.S.C. § 851(a)(1). Williams' sentence was not enhanced pursuant to section 851, however, but was enhanced under the career offender provisions of the guidelines. As noted above, Williams cannot demonstrate that he should not have qualified as a career offender under section 4B1.1. Thus, the notice requirements of 21 U.S.C. § 851 do

27

not apply in this case and cannot form the basis for vacating his sentence or remanding his case to the district court for resentencing.

Even if section 851 did apply, the Government's notice was adequate under Section 851. The notice incorrectly stated that Williams had previously been convicted of trafficking in cocaine under Georgia law. In fact, Williams had pleaded guilty to a lesser included offense of possession with intent to distribute cocaine. Although the charge described in the notice was incorrect, the notice included the criminal action number, county, date, and year of conviction. In addition, attached to the notice was a copy of the state court's final disposition, which clearly showed the conviction was for possession with intent. This notice was sufficient to "signal unambiguously the government's intent to seek an enhancement based on a particular prior conviction." Perez v. United States, 249 F.3d 1261, 1265-66 (11th Cir. 2001).

**AFFIRMED.**